**Belinda BUROG–PEREZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 03–70520.

Agency No. A71–954–489.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 2004.

Decided April 21, 2004.

Sharon Dulberg, Mcvey Mullery & Dulberg, San Francisco, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Linda S. Wendtland, Carol Federighi, Shelley R. Goad, U.S. Department of Justice, Washington, DC, for Respondent.

Before T.G. NELSON, W. FLETCHER, and BERZON, Circuit Judges.

MEMORANDUM *

Belinda Burog–Perez, a native of the Philippines, petitions for review of a decision of the Board of Immigration Appeals (BIA) denying her motion to remand to permit her to file an asylum application. Ms. Burog argues that she faced persecution in the Philippines on account of her status as a lesbian and that she has a well-founded fear of such persecution should she be forced to return.

We are constrained by the immigration laws and our precedent to deny the petition. Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

I.

A denial of a motion to remand is reviewed for abuse of discretion. *Castillo–Perez v. INS*, 212 F.3d 518, 523 (9th Cir.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

2000). Purely legal questions are reviewed de novo. *Id.* "Because the BIA conducted an independent review of the record, our review is limited to the BIA's decision." *Hernandez–Montiel v. INS,* 225 F.3d 1084, 1090 (9th Cir.2000).

## II.

The BIA may, as it did here, deny a motion to remand or reopen because the alien has not established a prima facie case of eligibility for the underlying relief sought. *See Ordonez v. INS,* 345 F.3d 777, 785 (9th Cir.2003). "[A] respondent demonstrates prima facie eligibility for relief where the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied." *Id.; see also Matter of L–O–G–,* 21 I. & N. Dec. 413, 419 (BIA 1996) (same). Ms. Burog correctly asserts that on a motion to remand or reopen she is not required to make a conclusive showing that, assuming the truth of the facts alleged, she is eligible for relief. *See Matter of L–O–G,* 21 I. & N. Dec. at 419. Nevertheless, "the allegations ... that are made in a motion to [remand or] reopen should be specific, not conclusory, and should be supported by evidence in the form of affidavits or other documentation." *Id.* at 418.

## A.

Past persecution is defined as "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." *Singh v. INS,* 134 F.3d 962, 967 (9th Cir.1998). To establish eligibility for asylum based on past persecution, an alien must show "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control." *He v.*

*Ashcroft,* 328 F.3d 593, 603 (9th Cir.2003) (quoting *Navas v. INS,* 217 F.3d 646, 655–56 (9th Cir.2000)).

The mistreatment described by Ms. Burog, while reprehensible, does not rise to the level of persecution as defined by the immigration laws. *See Fisher v. INS,* 79 F.3d 955, 961 (9th Cir.1996) (en banc) ("Persecution is an extreme concept, which ordinarily does not include '[d]iscrimination ..., as morally reprehensible as it may be.'") (quoting *Ghaly v. INS,* 58 F.3d 1425, 1431 (9th Cir.1995)); *see also Nagoulko v. INS,* 333 F.3d 1012, 1016–17 (9th Cir.2003) (concluding that alien who was teased, bothered, discriminated against, and harassed but never suffered any physical violence did not experience persecution).

Specifically, Ms. Burog's allegation that her patients left her dentistry practice because of her sexual orientation does not meet the standard for economic persecution under our case law. When persecution based on purely economic harm is alleged, we have required a showing of "a probability of *deliberate* imposition of *substantial* economic disadvantage." *Baballah v. Ashcroft,* 335 F.3d 981, 988 (9th Cir.2003) (citations and internal quotation marks omitted) (emphasis added). Ms. Burog's allegation that some private individuals chose to bring their business to another dentist for discriminatory reasons falls short. *See Nagoulko,* 333 F.3d at 1016 ("That Nagoulko was fired from her job as a kindergarten teacher because of her religious beliefs, while discriminatory, is not the type of economic deprivation that rises to the level of persecution."). Additionally, Ms. Burog has not presented any evidence concerning the Philippine government's inability or unwillingness to address the conditions she faced. *See Hernandez–Montiel,* 225 F.3d at 1097 (requiring that persecution be "inflicted ei-

ther by the government or by persons or organizations which the government is unable or unwilling to control").

We are unable to conclude that the BIA abused its discretion in determining that Ms. Burog did not made a prima facie showing of eligibility for asylum based on past persecution.

## B.

■ To establish eligibility for asylum on the basis of a well-founded fear of future persecution in the absence of past persecution, Ms. Burog must demonstrate that her fear of persecution is both "subjectively [genuine] and objectively reasonable." *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir.2003) (citation omitted).

Ms. Burog asserts that should she return to the Philippines, she would not be able to find a job given her appearance as a lesbian. As discussed above, Ms. Burog alleges that her dental practice declined when her clients left for discriminatory reasons. The only other specific evidence advanced by Ms. Burog to support her fear of economic persecution consists of documentary evidence that homosexuals are not permitted to serve in the military and that homosexuals are sometimes steered toward professions such as hairdressing. These circumstances, while unjust, do not rise to the level of economic persecution nor support a reasonable fear of persecution on the part of Ms. Burog. *See Nagoulko*, 333 F.3d at 1016.

Ms. Burog has submitted a variety of other evidence documenting the mistreatment of homosexuals in the Philippines that she contends demonstrates a well-founded fear of persecution based on a "pattern or practice" of persecution. In extreme cases where persecution is widespread, *see Hoxha*, 319 F.3d at 1183 n. 6, an asylum applicant "is not required to show that [she] would be singled out indi-

vidually for persecution if ... there is a pattern or practice ... of persecution of groups of persons similarly situated and she can establish[ ][her] own inclusion in the group such that [her] fear of persecution upon return is reasonable." *Mgoian v. INS*, 184 F.3d 1029, 1035 (9th Cir.1999) (citation and internal quotation marks omitted); *see also* 8 C.F.R. § 208.13(b)(2)(i).

In addition to the evidence regarding military service and employment discussed above, Ms. Burog's evidence includes reports that gay men employed by the city of Manila are prohibited from wearing female clothing and make-up and groups of gay men congregating in public places in Manila may be harassed by the police. Ms. Burog also offers reports from the Maguindanao province in the southern Philippines that Muslim and paramilitary leaders had banned homosexuals from certain towns and threatened them with physical harm in the mid–1990s.

This evidence, while disturbing, does not raise a reasonable likelihood that there is a widespread pattern or practice of persecution against individuals similarly situated to Ms. Burog. Enforcement of discriminatory dress and conduct rules does not rise to the level of persecution. *See Fisher*, 79 F.3d at 961. Neither does harassment or discrimination, standing alone. *See id.* at 962; *Nagoulko*, 333 F.3d at 1016–17. Although Ms. Burog's allegations might support a pattern or practice of persecution in some areas of Maguindanao, the evidence does not raise a reasonable likelihood of such persecution in any other location, and would not provide objective support for a well-founded fear of persecution by Ms. Burog, who has never resided in Maguindanao and has expressed no intent to do so.

In light of these considerations, we cannot conclude that the BIA abused its discretion in holding that Ms. Burog had not demonstrated a well-founded fear of future persecution.

### III.

■ Ms. Burog also argues that her motion to remand should have been granted because she was denied effective assistance of counsel when her former attorney failed to timely file an asylum application. The BIA did not abuse its discretion in denying Ms. Burog's motion on this basis, however, because she is unable to demonstrate prejudice from her attorney's ineffectiveness. *See Rodriguez–Lariz*, 282 F.3d 1218, 1226 (9th Cir.2002) (explaining that due process is not violated where the attorney's deficiency did not result in prejudice).

### IV.

Finally, the parties agree that Ms. Burog's voluntary departure period is stayed during the pendency of her petition for review. The stay will expire upon issuance of the mandate.

PETITION DENIED.

---

* Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.